Filed 5/13/24  P. v. Mendez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEX GARCIA MENDEZ,<br><br>    Defendant and Appellant. | E080625<br><br>(Super. Ct. No. RIF2201894)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge.
Affirmed.

Shelia O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

A jury convicted defendant and appellant Alex Garcia Mendez of robbery (Pen. Code,[1] § 211; count 2) while armed with a weapon and assault with a deadly weapon (§ 245, subd. (a)(1); count 3). The jury also found true that defendant inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of the assault (count 3).[2] In a bifurcated proceeding, defendant admitted he had suffered a prior conviction that qualified as both a prior serious felony (§ 667, subd. (a)) and a prior strike (§§ 667, subd. (e), (e)(1), 1170.12, subd. (c)(1)). After the trial court denied defendant's motion to dismiss his prior serious felony and strike conviction, defendant was sentenced to a total term of 14 years in state prison. On appeal, defendant contends (1) there was insufficient evidence to support the robbery conviction, and (2) Senate Bill No. 81 requires that only one enhancement be imposed and dismissal of the remaining enhancement. We reject these contentions and affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

M.A. is the owner and manager of a smoke shop in Riverside. At around 8:45 p.m. on April 10, 2022, M.A. was working at the register when he noticed defendant and

---

[1] All future statutory references are to the Penal Code unless otherwise indicated.

[2] The jury hung on count 1 for the charge of attempted premeditated murder (§§ 664/187, subd. (a)) and that count was ultimately dismissed.

a female companion entered his store. M.A. saw defendant grab a vape pen worth about $40, hide it behind a cup in his hand, and then tuck it into his pocket. Defendant then asked M.A. for another vape pen and headed to the register counter.

Defendant gave M.A. a $100 bill and requested to pay for the vape pen in his hand, which cost around $25. M.A. then inquired if defendant was going to pay for the vape pen in his pocket. Defendant denied having anything in his pocket or taking the other vape pen and indicated he was only paying for one vape pen. M.A. asked defendant to empty his pockets. Defendant refused and became angry. An argument ensued between defendant and M.A. with both of them yelling and cussing and defendant threatening M.A. M.A. explained that defendant acted "like if you don't give me my money back or step outside, I'll F you up," and "[You are] not gonna charge [me] for the other [vape], otherwise things are gonna happen."

During the argument, M.A. told defendant to leave the store and defendant told M.A. to step outside. The two eventually made their way to the front door of the store. Meanwhile, M.A.'s female companion, who was still near the register, reached over the register counter and stole M.A.'s iPhone. As defendant walked towards the exit, he removed a box cutter from his pocket and opened the blade. M.A. noticed defendant reach for something, so he turned to go behind the counter. Defendant then stabbed M.A. in the neck and dragged the blade down M.A.'s back. After the assault, M.A. went behind the counter and armed himself with a box cutter that was near the register. Defendant remained at the front of the store and continued to threaten M.A. Defendant

3

and his female companion then left the store with the vape and M.A.'s iPhone. The $100 bill was still in the store.

A customer entered the store and insisted on taking M.A., who was bleeding profusely, to the hospital. M.A. required surgery, and received multiple stitches for his injuries, some of which went deep enough to cause injury to the underlying bone, and all of which caused lasting scars.

Following a jury trial, defendant was convicted of robbery (§ 211) while armed with a weapon and assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found true that defendant inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of the assault. The jury further found true the aggravating factors that the crimes involved great violence and that defendant was armed during the commission of the offenses. Defendant admitted other aggravating factors and that he had suffered a prior serious felony conviction (§ 667, subd. (a)) and a prior strike (§§ 667, subd. (e), (e)(1), 1170.12, subd. (c)(1)).

Prior to the sentencing hearing, defendant filed a sentencing brief, in which he requested dismissal of his prior serious felony and strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Ca1.4th 497. At the sentencing hearing, the trial court expressed its inclination to deny the *Romero* motion and heard from the parties on the issue. Defendant's counsel emphasized that his strike was 10 years old, he had family support, and his criminal history was not marked by increasing violence until the instant offenses. The prosecutor countered that defendant's conduct in this case was "extremely,

4

extremely violent" and defendant's ongoing criminal history shows that he has "little respect for the law" and is "an absolute threat to society and the public in general . . . ." Citing defendant's "long history of criminal behavior" and the "massively senseless" nature of his instant offenses, the trial court denied the *Romero* motion.

The trial court then articulated its tentative sentencing decision, noting that it had initially contemplated the maximum of 16 years, but was "inclined to lower it slightly" and impose the middle term of three years on the principal count. The court explained that "it's a bit of a push to say that the aggravating factors, which were all found true by the jury, are somehow balanced by the mitigating factors," but it would take "into consideration [defendant's] family support and select the middle term." Defense counsel thereafter pointed out that defendant had admitted some of the aggravating factors, and requested that the court stay either the great bodily injury enhancement or the prior serious felony enhancement. The prosecutor reiterated that the upper term was appropriate given the aggravating factors.

The trial court imposed both the three-year great bodily injury enhancement and the five-year prior serious felony enhancement, and sentenced defendant to its indicated aggregate middle term of 14 years in prison with 326 days credit for time served as follows: the middle term of three years doubled to six years due to the prior strike, for the assault with a deadly weapon conviction; a consecutive three years for the great bodily injury enhancement; a consecutive five years for the prior serious felony

5

enhancement; and a stayed middle term of six years for the robbery conviction.

Defendant timely appealed.

III.

DISCUSSION

A. *Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his robbery conviction because he paid for the two vape pens when he gave M.A. enough money to cover the cost of both vapes and M.A. consented to defendant's taking of the vapes. He believes his robbery conviction must be reversed since his act of handing M.A. a $100 bill negated the intent to steal and felonious taking elements of robbery.

To determine whether the evidence was sufficient to sustain a criminal conviction, """"we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104; see *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 ["The federal standard of review is to the same effect."].) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the

6

credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."  (*People v. Jones* (1990) 51 Cal.3d 294, 314; accord, *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."].)  "When undertaking such review, our opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment."  (*People v. Hill* (1998) 17 Cal.4th 800, 849.)

"[T]he direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact."  (Evid. Code, § 411.)  The reliability of properly admitted eyewitness evidence, "like the credibility of the other parts of the prosecution's case is a matter for the jury."  (*Foster v. California* (1969) 394 U.S. 440, 442, fn. 2; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 200 ["We do not reweigh evidence or reevaluate a witness's credibility."].)  Unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.  (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.)

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, by means of force or fear, with the intent to permanently deprive the victim of the property.  (§ 211; *People v. Anderson* (2011) 51 Cal.4th 989, 994 (*Anderson*).)  Taking has two aspects:  achieving

7

possession of the property, known as caption, and carrying the property away, known as asportation. (*People v. Gomez* (2008) 43 Cal.4th 249, 255.)  "Although the slightest movement may constitute asportation [citation], the theft continues until the perpetrator has reached a place of temporary safety with the property." (*Ibid*.)  The requisite intent must arise before or during commission of the act of force or fear, and the defendant must apply the force or fear for the purpose of accomplishing the taking.  (*Anderson*, *supra*, at p. 994.)  For the force to be sufficient, the defendant must use more force than that necessary to achieve the mere taking of the property.  (*Id*. at p. 995.)

A robbery can occur when the defendant does not use force or fear while initially taking the property but does so to retain it.  (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28 (*Estes*); *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 223.)  This is known as an "*Estes* robbery." (*Miller v. Superior Court*, *supra*, at p. 223.)  The typical *Estes* robbery begins with a shoplifting that turns into a robbery when a loss prevention officer, manager, or owner confronts the thief, who then uses force or fear to get away.  (*People v. Robins* (2020) 44 Cal.App.5th 413, 419.)

There is no single "'temporal point'" at which all the elements of robbery must come together.  (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539-540.)  A robbery is a continuing offense; as noted above, it does not end until the perpetrator has reached a place of relative safety.  (*Anderson*, *supra*, 51 Cal.4th at pp. 994-996.)  "[T]he crime of robbery begins with the commission of any of the defined elements and is completed when all of the remaining elements have been committed.  It is a continuing offense that

8

concludes not just when all the elements have been satisfied but when the robber reaches a place of relative safety." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.) "A perpetrator has reached a place of temporary safety with the property if he or she has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property." (CALCRIM No. 1603.)

Here, we find sufficient evidence to support the jury's finding defendant committed a robbery. The evidence adduced at trial showed that defendant took M.A.'s property against M.A.'s will when he took the first vape pen, pocketed it, and denied doing so. Although defendant attempted to pay for the second vape pen after stealing the first one, he denied taking the first one and did not offer to pay for the first vape pen he had stolen. Specifically, when M.A. inquired if defendant was going to pay for the vape pen in his pocket, defendant denied having anything in his pocket or taking the vape pen and indicated he was only paying for one vape pen. And after M.A. asked defendant to empty his pockets, defendant refused, became angry, and started yelling, cussing, and threatening M.A. The argument between defendant and M.A. stopped any initiated transaction for the other vape pen. As the argument escalated between the two concerning defendant's theft of the first vape pen, M.A. told defendant to leave the store and defendant told M.A. to step outside. Defendant never agreed to pay for the stolen vape pen, and M.A. never consented to defendant taking either of the vape pens without paying for them. When defendant and M.A. were near the front door of the store, defendant then used force to retain possession of the stolen vape pen when he removed a

9

box cutter from his pocket and stabbed M.A. before leaving the store. What began as theft here, ripened into a so-called *Estes* robbery when defendant used force against M.A. to keep the first vape pen he had stolen when confronted by M.A.

Defendant, however, claims that his robbery conviction should be reversed because he "pa[id] for the items he was alleged to have taken" and M.A. "consented to the taking by keeping the money and escorting [him] out of the store[.]" We reject this argument. Defendant's interpretation of the record is skewed. In addition, defendant's purported attempt to pay for the second vape pen did not negate his ongoing intent to steal the first vape pen. Defendant repeatedly denied taking the first vape pen and refused to pay for it, leading to an argument that escalated to defendant assaulting M.A. with a box cutter.

We also reject defendant's attempt to analogize the instant circumstances to the claim of right cases. In *People v. Tufunga* (1999) 21 Cal.4th 935 (*Tufunga*), our Supreme Court affirmed that, as at common law, the claim of right remains a viable defense to a charge of robbery. (*Id*. at p. 950.) "'The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 872, quoting *Tufunga*, *supra*, at p. 950.) "[B]y use of the . . . term 'felonious taking' in section 211, the Legislature was . . . incorporating into the . . . statute the affirmative requirement, derived from the common law rule applicable to larceny and robbery, that the thief or robber *has*

10

*to intend to take property belonging to someone other than himself* in order to be guilty of theft or robbery, that is to say, the common law recognition of the defense of claim of right." (*Tufunga*, *supra*, 21 Cal.4th at p. 947, italics added.) *Tufunga* held, on the basis of this reasoning, that a good faith claim of right to the ownership of specific property can negate the element of felonious taking that is necessary to establish theft or robbery.

In rejecting the availability of a claim-of-right defense when a robbery is accomplished to satisfy a debt, the court in *Tufunga* invoked the following principal: "'The law does not contemplate the use of criminal process as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy. Hence, good faith, or the fact that the end accomplished by such means is rightful, cannot avail one as a defense in such prosecution, any more than such facts would constitute a defense where one compels payment of a just debt by the threat to do an unlawful injury to the person of his debtor.' [Citation.]" (*Tufunga*, *supra*, 21 Cal.4th at p. 956, italics omitted.)

The instant case differs from *Tufunga* in that here there was no evidence from which the jury reasonably could conclude that defendant sought to recover specific property or the right to keep the first vape pen he had stolen. Rather, the evidence shows that although defendant gave M.A. $100 to pay for the second vape pen and may have believed it to cover the first vape pen, he was trying to do so through "'the use of criminal process . . . .'" (*Tufunga*, *supra*, 21 Cal.4th at p. 956, italics omitted.) Moreover, there is sufficient evidence in the record to show that defendant did not intend

11

to pay for the first vape pen he had stolen. We decline defendant's invitation to extend the claim of right defense to the instant circumstances.

Defendant also asserts that once M.A. accepted payment for the vape pens and did not give him change for the $100 he had given him, M.A. consented to the taking. The record belies this contention. First, defendant denied having the first vape pen and did not intend to pay for it. Second, M.A. could not complete the transaction with giving defendant change for the $100 because defendant refused to produce and pay for the vape in his pocket. Thereafter, an altercation ensued that escalated to defendant assaulting M.A. with a box cutter and defendant leaving the store with the vape pen he had stolen. Defendant and M.A. did not reach a mutually agreed-upon solution, they simply seemed to forget about the money on the counter once they began to argue. Indeed, M.A. and defendant engaged in a heated argument because defendant intended to steal the vape and because M.A. did not consent to the taking. Simply put, defendant left the store with the stolen vape not because M.A. consented, but because defendant used force to take it from M.A. Defendant leaving the store with the stolen vape pen and without his $100 bill or change for that bill neither negates his intent to steal the vape nor constitutes M.A.'s consent to its taking.

Evidence supporting a conviction is not rendered insufficient by other evidence that may support an acquittal. Defendant had an opportunity to cross-examine witnesses and to argue to the jury that the defense evidence made a finding of intent inappropriate. It was then the jury's responsibility to weigh the evidence and determine whether it

12

sufficed. Viewing the record as a whole, considering the totality of the circumstances, and presuming the existence of every fact the trier of fact could reasonably deduce from the evidence (*People v. Kraft* (2000) 23 Cal.4th 978, 1053), we conclude that the evidence supporting defendant's conviction for robbery was reasonable, credible, and of solid value.

B. *Sentencing*

Defendant argues that section 1385, subdivision (c)(2)(B) prohibits the imposition of more than one enhancement in a single case. He concludes that one of the enhancements, either the great bodily injury enhancement or the prior serious felony enhancement, should therefore be dismissed, based upon the Legislature's use of the word "shall" in subdivision (c)(2)(B) of section 1385, which reads in part that "all enhancements beyond a single enhancement shall be dismissed." The People respond defendant forfeited this issue by failing to object during sentencing. Alternatively, the People argue defendant's contention lacks merit.

Defendant acknowledges his failure to object below to the imposition of both enhancement sentences, but insists the forfeiture doctrine does not apply because the sentence is legally unauthorized. As our high court confirmed in *People v. Scott* (1994) 9 Cal.4th 331, a party may forfeit or waive "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" by failing to object below. (*Id*. at p. 353.) However, this rule does not apply when the sentence is legally unauthorized. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) In the present matter,

13

because defendant argues that section 1385, subdivision (c)(2)(B) removes the trial court's authority to exercise its discretion at all in deciding whether to strike additional enhancements, we cannot definitively state that this rule of forfeiture applies without addressing the merits of his claim. Accordingly, we decline to decide the issue on forfeiture grounds despite defendant's failure to object below.

Because defendant's argument hinges on the proper construction of section 1385, we review his claim de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.) In interpreting a statute, our primary goal "'is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*Ibid*.) We do not "consider the statutory language 'in isolation.'" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .'" (*Ibid*.) "That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute. . . .'"'" (*Ibid*.)

Section 1385 has long permitted trial courts to dismiss sentence enhancements, or the additional punishment associated with such enhancements, if doing so is in furtherance of justice. (See former § 1385, amended by Stats. 1986, ch. 85, § 2, eff. May 6, 1986.) In October 2021, the Governor signed Senate Bill No. 81 that added a new

14

subdivision (c) to section 1385.  (Stats. 2021, ch. 721; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295 (*Mendoza*).)

Section 1385, subdivision (c), states in part:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  The mitigating circumstance identified in the subparagraphs include that "[m]ultiple enhancements are alleged in a single case."  (§ 1385, subd. (c)(2)(B).)

Thus, effective January 1, 2022, California law provides that a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1); *Mendoza*, *supra*, 88 Cal.App.5th at p. 295; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093-1094, review granted Apr. 12, 2023, S278894 (*Ortiz*).)  In exercising its discretion under subdivision (c)(1), a trial court "shall consider and afford great weight to evidence offered by the defendant" to prove one of nine enumerated mitigating circumstances.

(§ 1385, subd. (c)(2); *Mendoza*, *supra*, at pp. 295-296; *Ortiz*, *supra*, at pp. 1093-1094.) "Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2); *Mendoza*, *supra*, at p. 299; *Ortiz*, *supra*, at pp. 1093-1094.) The term "'[e]ndanger public safety'" is statutorily defined as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2); *Mendoza*, *supra*, at pp. 295-296; *Ortiz*, *supra*, at pp. 1093-1094.) There is no requirement for the trial court to consider particular factors in determining whether dismissal would endanger public safety. (*Mendoza*, *supra*, at p. 299.) Together, section 1385, subdivisions (c)(1) and (c)(2) establish the following: (1) the trial court has discretion to dismiss sentencing enhancements in the interests of justice; (2) certain mitigating circumstances weigh greatly in favor of dismissal; and (3) a finding of danger to public safety will overcome the mitigating circumstances. (See *Mendoza*, *supra*, at pp. 295-297; *Anderson*, *supra*, 88 Cal.App.5th at p. 239; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18 (*Lipscomb*).) "Section 1385 makes clear that whether dismissal of an enhancement is 'in the furtherance of justice' is a 'discretion[ary]' call for the trial court to make." (*People v. Walker* (2022) 86 Cal.App.5th 386, 395, review granted Mar. 22, 2023, S278309 (*Walker*); see § 1385, subd. (c)(2) ["In exercising its discretion . . ."].)[3]

_____

[3] We observe that a split of authority has emerged among the Courts of Appeal regarding the application of section 1385, subdivision (c)(2). (Compare *Walker*, *supra*, 86 Cal.App.5th 386, review granted with *Ortiz*, *supra*, 87 Cal.App.5th 1087.) How

*[footnote continued on next page]*

16

Because Senate Bill No. 81 by its express terms "appl[ies] to all sentencings occurring after January 1, 2022" (§ 1385, subd. (c)(7)), it was in effect when defendant was sentenced on January 27, 2023.

Defendant contends the trial court's sentence in this case violates current section 1385, subdivision (c)(2)(B) because the use of the word "shall" mandates the dismissal of all but one enhancement. In asserting this contention, he acknowledges that recent cases have uniformly rejected similar arguments after considering the totality of the statutory language. (See *Mendoza*, *supra*, 88 Cal.App.5th at pp. 290-293; *Anderson*, *supra*, 88 Cal.App.5th at pp. 238-240; *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 15-21; *Walker*, *supra*, 86 Cal.App.5th at pp. 395-398, review granted.)

In *Walker*, *supra*, 86 Cal.App.5th 386, the Court of Appeal considered whether section 1385, subdivision (c)(2)(B) mandates the dismissal of all but one sentencing enhancement in all cases. (*Walker*, *supra*, at p. 396, review granted.) The appellate court determined that it did not and explained, "the text and purpose of section 1385 in general, and Senate Bill No. 81 in particular, as well as the canons of statutory construction, counsel in favor of concluding that the [relevant statutory language] does not obligate trial courts to automatically dismiss all but one enhancement." (*Walker*, *supra*, at p.

courts should construe and apply the newly added provision is a question currently pending before the California Supreme Court. In granting review of the *Walker* decision, our high court defined the issue as follows: "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*People v. Walker*, S278309, Supreme Ct. Mins., March 22, 2023.)

17

396.)  "The phrase 'all enhancements beyond a single enhancement shall be dismissed' is not a standalone mandate of section 1385," but rather one of nine mitigating circumstances.  (*Walker*, *supra*, at p. 397.)   Further, the court noted that "[s]ection 1385 explicitly instructs that the existence of a mitigating circumstance—including the one for '[m]ultiple enhancements'—'weighs greatly in favor of dismiss[al]'" but, under the remaining statutory language, the trial court retains its discretion "to evaluate whether dismissal is in the furtherance of justice by weighing enumerated and unenumerated mitigating factors against whether dismissal of an enhancement would 'endanger public safety.'"  (*Ibid.*, italics omitted.)

The *Walker* court, therefore, concluded that section 1385, subdivision (c)(2)(B) "means what it says—namely, that if a trial court determines that the mitigating circumstance of '[m]ultiple enhancements . . . in a single case' exists and that dismissal of the enhancements will not 'endanger public safety,' then the court's discretion to dismiss is somewhat constrained by the phrase's mandate that the court must dismiss all but one of those multiple enhancements."  (*Walker*, *supra*, 86 Cal.App.5th at p. 397, review granted.)  Additionally, the court determined that "section 1385's use of the additional phrase 'great weight'" "erects a presumption in favor of the dismissal of the enhancement unless and until the court finds that the dismissal would 'endanger public safety' as that term is defined in section 1385."  (*Id.* at pp. 398-399.)

The court in *Lipscomb* addressed essentially the same issue in the context of section 1385, subdivision (c)(2)(C).  There, the trial court had declined to dismiss a

section 12022.53, subdivision (d) enhancement—which resulted in imposition of an additional term of 25 years to life—based on a finding that dismissal "'would result in physical injury or serious danger to others.'" (*Lipscomb*, *supra*, 87 Cal.App.5th at p. 13.) The defendant asserted the dismissal was mandatory based on the "'shall be dismissed'" language in section 1385, subdivision (c)(2)(C), but, as in *Walker*, the appellate court concluded subdivision (c)(2)(C) did not compel dismissal in all cases. (*Lipscomb*, *supra*, at p. 20.) Rather, the court explained that the full language of the statute, read in context, "expressly empower[s] the [trial] court to impose the enhancement upon a finding that dismissing it would endanger public safety." (*Id*. at p. 19.)

In *Ortiz*, *supra*, 87 Cal.App.5th 1087, the appellate court declined to follow *Walker* to the extent it would "require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety" because to do so "would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors." (*Id*. at p. 1098.) Such factors under "'generally applicable sentencing principles' relevant to a court's determination of whether dismissal is in furtherance of justice 'relat[e] to matters such as the defendant's background, character, and prospects.'" (*Id*. at p. 1097, quoting *People v. Williams* (1998) 17 Cal.4th 148, 160.) "Those principles require consideration of circumstances in mitigation (and aggravation) in the broader context of the recognized objectives of sentencing, which are not limited to public safety." (*Ortiz*, *supra*, at p. 1097 citing Cal. Rules of Court, rule 4.410).)

In the most recent decision related to this issue, this court in *Mendoza* determined that, if the trial court found that dismissal of the enhancement would endanger public safety, it need not go on to consider the mitigating factors. (*Mendoza*, *supra*, 88 Cal.App.5th at p. 297.) And, because the trial court in that case expressly found such endangerment present, we concluded it did not need to analyze how the "'shall be dismissed'" language of section 1385, subdivision (c)(2)(C) operates when a trial court finds that dismissal of a firearm enhancement would not endanger public safety. (*Mendoza*, *supra*, at p. 297.)

We again conclude that section 1385, subdivision (c)(2)(B) requires dismissal of a sentencing enhancement only where the trial court concludes dismissal would not be in the furtherance of justice and/or would endanger public safety.[4] (§ 1385, subd. (c)(2).) As other courts have observed, reading the "shall be dismissed" language as mandatory requires us to consider it in isolation. (See, e.g., *Walker*, *supra*, 86 Cal.App.5th at p. 397, review granted [commenting that "[i]f we were to read the phrase appended to the multiple enhancements mitigating factor as *automatically* mandating dismissal of all but one enhancement whenever multiple enhancements exist, then the existence of multiple enhancements would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively*'"].) Further, such a construction violates the direction to "'harmonize the

_____

[4] Because defendant does not argue in the alternative that the trial court abused its discretion in refusing to dismiss one of the two enhancements, we need not decide which court's construction of the statute to adopt, nor must we evaluate the trial court's justification for the sentence in this case.

20

various parts of the enactments.'"  (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.)  If a trial court was required to dismiss all enhancements beyond a single enhancement in all cases, the language regarding the court's "discretion," proof of the multiple enhancements "weigh[ing] greatly," and the court's authority to consider whether "dismissal of the enhancement would endanger public safety" would all be rendered meaningless.  Precedent has long made clear that "'[a] construction making some words surplusage is to be avoided.'"  (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

RAPHAEL

J.